UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

R. ALEXANDER ACOSTA[1], Secretary of Labor,
United States Department of Labor,
    Plaintiff,

v.

Case No. 3:17-cv-00032

AMY DEMMY,
DEMMY SAND & GRAVEL, LLC, and the
DEMMY SAND & GRAVEL, LLC
RETIREMENT SAVINGS PLAN,

    Defendants.

## CONSENT ORDER AND JUDGMENT

Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("the Secretary"), pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1001, et seq., filed a complaint against Defendants Amy Demmy, Demmy Sand & Gravel, LLC and the Demmy Sand & Gravel, LLC Retirement Savings Plan, ("Defendants") alleging breaches of fiduciary responsibilities under ERISA §§403(c)(1), 404(a)(1)(A) and (B), 406(a)(1)(D), and 406(b)(1) and (2), with respect to the Demmy Sand & Gravel, LLC Retirement Savings Plan ("the Plan"). The Plan was named as a defendant in the complaint pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure complete relief could be granted.

---

[1] R. Alexander Acosta is the current Secretary of Labor. He succeeded Edward C. Hugler, Acting Secretary of Labor who succeeded Thomas E. Perez.

1

Defendants Amy Demmy ("Demmy"), Demmy Sand & Gravel, LLC ("the Company"), and the Plan, have answered the complaint and admit to the jurisdiction of this Court over them and the subject matter of this action.

The plaintiff and defendants have agreed to resolve all matters in controversy in this action between them (except for the imposition by Plaintiff of any penalty pursuant to ERISA §502(l), 29 U.S.C. §1132(l), and any proceedings related thereto) and said parties do now consent to entry of a Consent Order and Judgment by this Court in accordance therewith.

Upon consideration of the record herein, and as agreed to by the parties, the Court finds that it has jurisdiction to enter this Consent Order and Judgment.

IT IS THEREFORE ORDERED that:

1. Defendants Demmy and the Company are permanently enjoined and restrained from violating the provisions of Title I of ERISA, 29 U.S.C. §1001 *et seq.*

2. Defendants Demmy and the Company are jointly and severally liable to the Plan in the amount of $350,234.99, a money judgment for which execution may issue and interest shall accrue at the Internal Revenue Code Section 6621 rate from January 31, 2018 forward. This sum represents employee contributions ($2,409.65), loan repayments ($31,256.87), and fringe benefits ($257,496.56), not forwarded to the Plan, plus lost opportunity costs computed through January 31, 2018 ($59,071.91). These amounts do not include monies owed to Defendant Demmy ($1,626.47 in loan repayments and $7,253.80 in fringe benefits).

3. Defendant Demmy is owed $8,880.27 as a result of her failure to forward

employee contributions, loan repayments, and fringe benefits to the Plan. Defendant Demmy hereby waives the repayment of this sum to her individual Plan account as part of the resolution of this matter.

4. Defendant Demmy shall pay $35,292.99 to the Plan before February 15, 2018.

5. Defendants Amy Demmy and the Company are specifically enjoined from withdrawing any funds from the Plan, including Defendant Demmy's participant balance.

6. As of January 23, 2018, Defendant Demmy has a balance of $60,489.85 in the Plan. Immediately upon the effectiveness of this paragraph of this Consent Order and Judgment, Defendant Demmy hereby authorizes the independent fiduciary (referred to in paragraph 12 below) to

a. withhold and remit to the Treasury Department (I.R.S.) 20% of her account balance,

b. cause her individual account balance in the Plan to be used to pay the fees of the Plan, including the fees of the independent fiduciary (see paragraphs 12j and 12k below), and

c. reallocate the remaining sum to the accounts of the participants and beneficiaries of the Plan on a pro rata basis using the per participant percentages contained in the attached Exhibit A, which is hereby incorporated into this Consent Order and Judgment, pursuant to Section 1502(a) of the Taxpayer Relief Act of 1997, codified at 29 U.S.C. §1056(d)(4).

The Plan is hereby deemed amended to allow for such forfeiture of Defendant Demmy's individual Plan account.

7. Defendant Demmy shall provide the Secretary with satisfactory proof of the payment described in paragraphs 4 above within five (5) calendar days following the payment. Proof shall be sent to the Regional Director of the Employee Benefits Security Administration, U.S. Department of Labor, 1885 Dixie Highway, Room 210, Fort Wright, KY 41011 ("Regional Director").

8. The amount paid to the Plan (in paragraph 4 above) and the forfeiture (in paragraph 6c above) shall be credited to the $350,234.99 judgment.

9. Defendant Demmy has demonstrated a current inability to pay the remaining amount owed to the Plan. Her demonstration of current inability to pay includes her completion of an Affidavit of Financial Status executed under penalty of perjury and her 2010 through 2016 U.S. Tax Returns. Defendant Demmy agrees for the next 3 years to submit to the Regional Director her annual federal tax returns on or before 30 days after filing for each year, and, if she is not required by Federal law to file an annual federal tax return, she will provide a statement under oath that such filing is not required.

10. Defendant Demmy agrees that 100% of any bequest, inheritance, gifts (over $5,000), lottery and gambling winnings over $5,000, or proceeds of any life insurance policy she may receive shall be restored to the Plan (up to the outstanding amount due the Plan after all payments and forfeitures have been made) within 30 days of receipt. In restoring the monies, Defendant Demmy shall send the monies directly to the Plan. If the Plan has been terminated by the time she makes further payments, Defendant Demmy shall make payments to the Plan's participants (listed on the attached Exhibit A) on a pro rata basis using the per participant percentages contained in the attached Exhibit

A, which is hereby incorporated into this Consent Order and Judgment. Defendant Demmy shall provide the Secretary with satisfactory proof of the payments within five (5) calendar days following the payment. Proof shall be sent to the Regional Director.

11. If it is found that the documents Defendant Amy Demmy provided regarding her financial status are untrue, the full amount of losses owed the Plan, plus accrued interest, shall immediately become due and payable together with post-judgment interest pursuant to 28 U.S.C. §1961.

12. Defendants Demmy and the Company are removed as fiduciaries of the Plan. AMI Benefit Plan Administrators, Inc. located at 100 Terra Bella Drive, Youngstown, Ohio 44505 is appointed as the independent fiduciary of the Plan. The independent fiduciary shall have the following powers, duties and responsibilities:

    a. The independent fiduciary shall have responsibility and authority for terminating the Plan. Such termination shall be made in accordance with the Plan's governing documents, the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 et seq., and the Internal Revenue Code ("IRC"). While not required to obtain a determination letter to terminate the Plan under ERISA or the IRC, the independent fiduciary shall make a determination as to whether it is prudent to go through the determination letter process for the Plan;

    b. The independent fiduciary's responsibilities with respect to the termination of the Plan shall include, but not be limited to, liquidating the Plan's assets, communicating with participants regarding the termination of the Plan and their disbursal options, calculating the participant and beneficiaries account balances, and filing appropriate termination papers with the Internal Revenue

Service and the Department of Labor. Allocation of monies collected shall be pro-rated according to Exhibit A attached to this Consent Order and Judgment;

c. The independent fiduciary shall have responsibility and authority to collect, liquidate, and manage such assets of the Plan for the benefit of the eligible participants and beneficiaries for the Plan who are entitled to receive such assets, until such time that the assets of the Plan are distributed to the eligible participants and beneficiaries of the Plan;

d. The independent fiduciary shall exercise reasonable care and diligence to identify and locate each participant and beneficiary of the Plan who is eligible to receive a payment under the terms of the Plan and to disburse to each such eligible participant or beneficiary the payment to which he or she is entitled;

e. The independent fiduciary shall have full access to all data, information and calculations in the Plan's possession or under its control, including that information contained in the records of the Plan's custodial trustees and other service providers, bearing on the distribution of benefit payments, participant account balances, and current plan assets;

f. The independent fiduciary may terminate any current service providers to the Plan and retain such persons and firms including, but not limited to, accountants and attorneys, as may be reasonably required to perform his duties hereunder;

g. The independent fiduciary shall obtain bonding in an amount that meets the requirements of ERISA §412, 29 U.S.C. §1112;

6

h. The independent fiduciary shall not be responsible for bringing any action on behalf of the Plan against any prior fiduciaries or service providers of the Plan for violations of state or federal law that occurred prior to the date of the independent fiduciary's appointment. The independent fiduciary shall be responsible for pursuing any violations of ERISA that occur after his appointment as the independent fiduciary by this Court;

i. The independent fiduciary may not be held responsible or liable for any claim against the Plan or related entities that existed, arose, matured or vested prior to his appointment as independent fiduciary for the Plan

j. The independent fiduciary represents that he will not charge more than $5,140.00, including reasonable out-of-pocket expenses as incurred (bond purchase, etc.).

k. The independent fiduciary's fees and administrative expenses and costs incurred in terminating the Plan shall be paid from Defendant Demmy's Plan account. Additionally, any administrative expenses currently due shall be paid from Defendant Demmy's Plan account.

13. Defendants Demmy and the Company are permanently enjoined from serving or acting as fiduciaries or service providers with respect to any employee benefit plan subject to ERISA.

14. Defendants Demmy and the Company admit the following:

a. They are fiduciaries of the Plan within the meaning of 29 U.S.C. Section 1002(21) and have been fiduciaries since at least January 1, 2010, the date the Plan became effective. Defendant Demmy signed the Plan's Adoption Agreement.

b. They are parties in interest to the Plan within the meaning of 29 U.S.C. Section 1002(14).

c. The Plan is an employee benefit plan within the meaning of 29 U.S.C. Section 1002(3).

d. During the period January 5, 2011 through October 30, 2013, the Plan document stated participants could elect to defer a portion of their wages to be contributed to the Plan and could take out loans from the Plan.

e. During the period January 5, 2011 through October 30, 2013, Defendant Amy Demmy had the authority and control over whether the Company remitted withheld employee contributions and loan repayment to the Plan and exercised this authority.

f. During the period January 2, 2013 through October 30, 2013, Defendant Demmy and the Company withheld $2,409.65 from the Company's employees' pay as contributions to the Plan. The Company retained the withheld employee contributions in its general assets.

g. During the period January 2, 2013 through October 30, 2013, Defendant Demmy caused the Company to retain $2,409.65 in employee contributions to the Plan that had been withheld from the Company's employees' pay, and failed to ensure that these withholdings were remitted to the Plan.

h. During the period January 2, 2013 through October 30, 2013, Defendant Demmy caused the Company to keep the $2,409.65 in unremitted employee contributions to the Plan in the general assets of the Company for use by the Company.

i.  During the period January 5, 2011 through May 22, 2013, loan repayments were withheld from employees' pay to be forwarded to the Plan. The Company retained the withheld loan repayments in its general assets.

j.  During the period January 5, 2011 through May 22, 2013, Defendant Demmy caused the Company to retain these loan repayments.

k.  During the period January 5, 2011 through May 22, 2013, these loan repayments were held in the Company's corporate account up to 180 workdays after they were withheld before some of them were forwarded to the Plan.

l.  During the period January 5, 2011 through May 22, 2013, Defendant Demmy caused the Company to hold loan repayments to the Plan in the general assets of the Company for use by the Company.

m.  On July 18, 2012; from August 1, 2012 through March 27, 2013; and from April 24, 2013 through May 22, 2013, $32,883.34 in loan repayments were withheld from employees' pay to be forwarded to the Plan. The Company retained the withheld loan repayments in its general assets.

n.  On July 18, 2012; from August 1, 2012 through March 27, 2013; and from April 24, 2013 through May 22, 2013, Defendant Demmy caused the Company to retain $32,883.34 in loan repayments to the Plan that had been withheld from the Company's employees' pay, and failed to ensure that these withholdings were remitted to the Plan.

o.  On July 18, 2012; from August 1, 2012 through March 27, 2013; and from April 24, 2013 through May 22, 2013, Defendant Demmy caused the Company

to keep the $32,883.34 in loan repayments to the Plan in the general assets of the Company for use by the Company.

p. Defendant Demmy never forwarded this $32,883.34 in loan repayments to the Plan.

q. Pursuant to several state, federal, or municipal government contracts subject to the Davis Bacon Act ("DBA"), 40 U.S.C. §§276(a) *et. seq.*, Service Contract Act ("SCA"), 41 U.S.C. §§351, *et. seq.*, and/or state or municipal prevailing wage laws (collectively, "Prevailing Wage Contracts"), the Company, acting through Defendant Demmy, agreed to utilize part of the money it received under the Prevailing Wage Contracts to pay employer contributions as prevailing wage fringe benefits to the Plan.

r. The Company received funds pursuant to Prevailing Wage Contracts for work it performed from January 5, 2011 through May 22, 2013. The amounts received were sufficient to pay the prevailing wage rate contributions.

s. According to the Plan's governing documents, the Company may make prevailing wage contributions, in order to satisfy the employer's obligations under Prevailing Wage Contracts, to the Plan. The prevailing wage contributions are to be made by the Company for the benefit of participants. Moreover, timing of the payment of these contributions is determined by the applicable prevailing wage laws. For example, the Davis Bacon Act requires quarterly remittances of prevailing wage contributions.

t. Between January 5, 2011 and May 22, 2013, $264,750.36 in prevailing wage contributions owed by the Company under its Prevailing Wage Contracts were not remitted to the Plan.

u. Defendants Demmy and the Company certified on payroll records that they would pay these fringe benefits to participants through the Plan. Defendants Demmy and the Company knew they were responsible for remitting fringe benefits to the Plan.

v. Since January 7, 2010, Defendant Demmy had control over the bank account which held the fringe benefits. Defendant Demmy was an "authorized signer" of this bank account in her capacity as President/Owner/CEO of the Company.

w. Before January 2011, Defendants Demmy and the Company were fiduciaries of the Plan and properly paid fringe benefits owed employees on prevailing wage contracts. Defendants knew the proper procedure for paying fringe benefits.

x. To date, Defendants Demmy and the Company have failed to take any actions on behalf of the Plan to collect the delinquent prevailing wage contributions owed to the Plan.

y. When the unpaid fringe benefits became due and owing, they became assets of the Plan, and therefore, assets held in trust.

z. By failing to collect the delinquent prevailing wage contributions, Defendant Demmy allowed the Company to keep the ear-marked money from the various Prevailing Wage Contracts in its own account for the use and benefit of the Company and its members.

aa. Defendant Demmy was the Company's authorized accountholder who accepted prevailing wage contributions into the Company's account. Defendants Demmy and the Company held the fringe benefit portion of the prevailing wages for the beneficial interest of the Plan's participants.

bb. The employee contributions and loan repayments are plan assets that should have been forwarded to the Plan, or, in the case of the fringe benefits, the Plan had a beneficial interest in the fringe benefits due to the Plan.

cc. The Secretary alleges and Defendants do not dispute that Defendants Demmy and the Company used these plan assets and fringe benefits for their own benefit, not for the benefit of the participants and beneficiaries of the Plan.

dd. Defendants Demmy and the Company failed to ensure that plan assets and fringe benefits were paid into the Plan.

15. By failing to forward the employee contributions and loan repayments referred to in paragraphs 2 and 14 above to the Plan, Defendants Demmy and the Company, in their capacity as fiduciaries of the Plan:

a. failed to hold the assets of the Plan in trust, in violation of ERISA §403(c)(1), 29 U.S.C. §1103(c)(1);

b. failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

c. failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

d. caused the Plan to engage in transactions that they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, parties in interest, of any assets of the Plan, in violation of ERISA §406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D);

e. The Secretary alleges and Defendants do not dispute that Defendants dealt with assets of the Plan in their own interest or for their own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1);

f. in their individual or other capacity, acted in transactions involving the Plan on behalf of parties (or represented parties) whose interests were adverse to the interests of the Plan, or the interests of its participants or beneficiaries, in violation of ERISA §406(b)(2), 29 U.S.C. §1106(b)(2).

16. By failing to collect and remit fringe benefits to the Plan, in which the Plan had a beneficial interest, Defendants Demmy and the Company, in their capacity as fiduciaries of the Plan:

a. failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

b. failed to discharge their duties with respect to the Plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c. failed to act in accordance with the documents and instruments governing the Plan in violation of ERISA § 404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D).

17. Defendant Demmy's breaches of fiduciary duties under ERISA to the Plan, as set forth above in paragraph 15 and 16 above, constitute defalcations while acting in a fiduciary capacity with respect to the Plan and its participants, within the meaning of 11 U.S.C. §523(a)(4).

18. In the event Defendant Demmy files for bankruptcy protection in the future, any amount of unpaid liability set forth in paragraph 2 above, which resulted from her breach of fiduciary duty, is, and shall be treated as, a nondischargeable debt under §523(a)(4) of the Bankruptcy Code, 11 U.S.C. §523(a)(4). Defendant Demmy does not agree that any future penalty imposed under ERISA 502(l), 29 U.S.C. Section 1132(l), is nondischargeable in bankruptcy.

19. The admissions set forth in paragraphs 14 through 17 above shall be used as admissions in this civil action and any bankruptcy case involving Defendants, but not in any criminal case or other legal proceeding.

20. Each party agrees to bear his/her/its own attorneys' fees, costs and other expenses incurred by such party in connection with any stage of this proceeding to date including, but not limited to, attorneys' fees which may be available under the Equal Access to Justice Act, as amended.

21. The Court shall maintain jurisdiction over this matter only for purposes of enforcing this Consent Judgment and Order.

22. Nothing in this Order is binding on any government agency other than the United States Department of Labor with respect to its civil ERISA claims.

23. This Consent Order and Judgment does not resolve any criminal liability, or any restitution, forfeitures, or fines arising out of such liability, if any, and paragraphs 2, 3, 6, 8, 9, 10, 11, 14, 15, 16, 17, 18, and 19 above shall only become effective and enforceable upon execution by both Defendant Demmy and the United States Attorney's Office for the Southern District of Ohio of any plea agreement concerning the associated/related federal criminal investigation involving Defendant Demmy and her past management of Defendant Demmy Sand & Gravel, LLC and the Plan. Defendant Demmy agrees to cooperate with the United States Attorney's Office in resolving any related criminal case. If the related criminal case is not resolved within 90 days of the entry of this Consent Order and Judgment, paragraphs 2, 3, 6, 8, 9, 10, 11, 14, 15, 16, 17, 18, and 19 of this Judgment are not effective and this civil case will continue. All other paragraphs in this Judgment are effective and enforceable upon entry of this Judgment.

Dated: 2-16-18

_____
UNITED STATES DISTRICT COURT JUDGE

The parties hereby apply for and consent to the entry of this Consent Judgment and Order.

FOR PLAINTIFF, SECRETARY OF LABOR,

*Maureen M. Cafferkey*   Dated  2/16/18
MAUREEN M. CAFFERKEY
Attorney

R. Alexander Acosta, Secretary of Labor
U.S. Department of Labor
881 Federal Office Building
1240 East Ninth Street
Cleveland, Ohio 44199
Telephone: (216) 522-3872
Facsimile: (216) 522-7172
E-mail: cafferkey.maureen@dol.gov

FOR DEFENDANTS:

*Amy Demmy by [signature]*   *Via Email Authority dated 2/5/18*   Dated: 2/6/18
AMY DEMMY individually, as *Counsel*,
Fiduciary of the Demmy Sand & Gravel,
LLC Retirement Savings Plan, and as
President of Demmy Sand & Gravel, LLC

*[signature]*   Dated: 2/6/18
J. MATTHEW FISHER
JAMES A. COUTINHO
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, Ohio 43215
Phone: 614-221-8500
Fax: 614-221-5988
Email: fisher@aksnlaw.com
       coutinho@aksnlaw.com

FOR PLAINTIFF, SECRETARY OF LABOR,

Dated _____.

_____
MAUREEN M. CAFFERKEY
Attorney

R. Alexander Acosta, Secretary of Labor
U.S. Department of Labor
881 Federal Office Building
1240 East Ninth Street
Cleveland, Ohio 44199
Telephone: (216) 522-3872
Facsimile: (216) 522-7172
E-mail: cafferkey.maureen@dol.gov

FOR DEFENDANTS:

_____[signature]_____          Dated: 2.5.18  .
AMY DEMMY, Individually, as
Fiduciary of the Demmy Sand & Gravel,
LLC Retirement Savings Plan, and as
President of Demmy Sand & Gravel, LLC

                                       Dated: _____

_____
T. MATTHEW FISHER
JAMES A. COUTINHO
Allen Kuehnle Stovall & Neuman LLP
17 South High Street, Suite 1220
Columbus, Ohio 43215
Phone: 614-221-8500
Fax: 614-221-5988
Email: fisher@aksnlaw.com
       coutinho@aksnlaw.com

16

# EXHIBIT A

| Participant Name | % |
|---|---|
| Becraft, Jeremy T. | 0.60% |
| Coate, James | 0.99% |
| Dinnen, Rodger | 4.25% |
| Espitia, Pedro A. | 3.11% |
| Havens, Alonzo C. | 7.89% |
| Havens, Alonzo W. | 0.23% |
| Havens, Timothy S. | 0.81% |
| Howell, Franklin | 0.66% |
| Jackson, Terry R. | 1.42% |
| Jackson, Tab D. | 4.82% |
| Johnson, Brian D. | 5.32% |
| Jones, Larry | 0.00% |
| Keeton, Daniel W. | 7.78% |
| Keeton, Jason | 4.93% |
| Magulac, Jerry Lee | 0.45% |
| Mendenhall, Robert S. | 9.28% |
| Mendez, Roberto M. | 2.97% |
| Monroe, Raymond J. | 10.62% |
| Monroe, William J. | 7.94% |
| Picolo, Michael J. | 4.66% |
| Ramirez, Jose | 4.49% |
| Rice, Mark | 0.23% |
| Scott, Bobby | 0.27% |
| Smith, David R. | 0.59% |
| Stillings, Jeffrey | 4.84% |
| Vanness Jr, Fredrick | 5.27% |
| Waddle, Christopher A. | 4.76% |
| Whitt, Bill | 0.08% |
| Zugelder, Richard | 0.74% |